IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOLLY L. PHIPPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 13-cv-1025-SMY-CJP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM and ORDER

**Yandle, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Molly L. Phipps is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB).

## Procedural History

Plaintiff applied for DIB on March 2, 2010. She alleged disability beginning on October 15, 2009. (Tr. 13). After holding a hearing, Administrative Law Judge (ALJ) Dina R. Loewy denied the applications in a decision dated May 22, 2012. (Tr. 13-26). The Appeals Council denied review and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint has been filed in this court.

## Issues Raised By Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in determining plaintiff's RFC by failing to include additional limitations, failing to sufficiently cite medical evidence, not properly weighing the expert opinions, and being inconsistent within her opinion.

2. The ALJ erred in assessing plaintiff's credibility by failing to use plaintiff's specific testimony.

### Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.  The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the

> applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden

shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## <u>The Decision of the ALJ</u>

ALJ Loewy followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the

alleged onset date. The ALJ found that plaintiff had severe impairments of degenerative disc disease, inflammatory bowel disease, not otherwise specified, arthritis, anxiety, and depression.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light level, with physical and mental limitations. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was unable to perform her past relevant work as a hairdresser. However, she was not disabled because she was able to do other work that existed in significant numbers in the regional and national economies. (Tr. 13-26).

### The Evidentiary Record

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

**1. Agency Forms**

Plaintiff was born in 1974 and was thirty-five years old at the alleged onset date. She was insured for DIB through December 2010. (Tr. 141). She completed high school and had specialized training in cosmetology. (Tr. 162).

According to plaintiff, her Crohn's disease, arthritis, anxiety, depression, hypothyroidism, and migraines made her unable to work. (Tr. 160). Since 1995, plaintiff worked in a beauty salon as either a shampoo girl or a beautician. (Tr. 162).

Plaintiff submitted two Function Reports in 2010 wherein she stated her arthritis, degenerative changes in her spine, and pain in her stomach made her daily activities

difficult. (Tr. 173, 226). Plaintiff had two young children she cared for with the help of her husband, mother, and adult daughter. (Tr. 173, 226-27). She was able to take care of her personal needs but needed help preparing meals and doing laundry. (Tr. 173-74, 228). Plaintiff was able to drive and could manage her own funds. (Tr. 175, 229).

Plaintiff said she had trouble lifting, bending, standing, reaching, walking, climbing stairs, using her hands, hearing, completing tasks, getting along with others, concentrating, understanding, and remembering. She stated lifting her child was difficult and reaching hurt her back. Her hands were achy and she had to rest after walking for fifteen minutes. She felt her concentration and memory were impaired due to stress from her anxiety and depression. (Tr. 177, 231).

## 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on March 1, 2012. (Tr. 35). She stated she was 5'5" and weighed 162 pounds. (Tr. 38-9). She was in the middle of a divorce with her husband and was separated at the time of the hearing. (Tr. 39). She was still covered on her husband's insurance, however, because their divorce was not yet finalized. (Tr. 43). Plaintiff lived with her three children ages twenty, nine, and three. (Tr. 39). Plaintiff testified that she sometimes drove but experienced pain if she sat for too long. (Tr. 39-40). She stated she had active Crohn's disease that only went into remission for two or three months at a time. (Tr. 40).

Plaintiff testified to receiving six-hundred dollars in child support monthly. Additionally, if she had a "good day" she would cut someone's hair for about twenty-five dollars. She stated she had two to three good days a month. (Tr. 42). Plaintiff

graduated from high school and received a professional license in cosmetology. (Tr. 43). She worked in a salon for roughly one year where she either paid rent or received commission. (Tr. 44-48). She stopped working at a salon approximately two months before the hearing. (Tr. 44).

Plaintiff stated that she had both Crohn's disease and colitis. (Tr. 50). Her Crohn's disease caused her to have arthritis, and become fatigued and nauseated. (Tr. 51). She received Humira injections and Remicade treatments. The Remicade treatments did not help but the Humira put her into remission. (Tr. 50-51). At the time of the hearing, the only medication plaintiff took was Prozac for depression. (Tr. 52). The doctors plaintiff regularly saw were her gastroenterologist, Dr. Presti, her rheumatologist, Dr. Ince, and her pain management specialist, Dr. Backer. (Tr. 53).

Plaintiff testified that she kept busy with her children. She did not have many hobbies but occasionally watched television. She was able to cook and do laundry on most days. Plaintiff's mother would help her take care of the chores when she had a bad day. (Tr. 55). On her bad days she felt as though she could hardly walk to the restroom and had very little energy. (Tr. 56-57). Plaintiff testified to having to use the restroom constantly on her bad days due to Crohn's disease. (Tr. 58). She had back pain that she took ibuprofen to treat and could stand or sit for about thirty minutes. (Tr. 65). She stated that she was most comfortable when she was lying on her side. (Tr. 65).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do light work, limited to occasional

7

stooping, kneeling, crouching, and crawling. Additionally, she could only occasionally climb stairs, ladders, ropes, or scaffolds, and was limited to simple routine tasks. (Tr. 67-8).

The VE testified that the person could not perform any of plaintiff's previous work. However, the person could do jobs that exist in significant numbers in the national economy. Examples of such jobs are retail sales, light housekeeping, and cafeteria attendant. (Tr. 68). The VE also testified that if the person had to miss work more than one day a month or take more than the customary number of breaks no jobs would be available. (Tr. 69).

### 3.   Medical Treatment Until Date Last Insured[1]

In March 2009, plaintiff went to the hospital for dull and cramping abdominal pain that was aggravated by eating. (Tr. 271). She had an upper endoscopy in April 2009 that revealed minimal inflammatory changes but was an otherwise normal scan. (Tr. 300). Later that month plaintiff underwent surgery to have her gallbladder removed due to cholecystitis. (Tr. 307).

In May 2009, plaintiff returned to the hospital complaining of mild to moderate shoulder and back pain for which she was prescribed medications. (Tr. 278-79). In July 2009, plaintiff was diagnosed with degenerative disc disease but had normal motor strength and a normal gait. The treating physician felt plaintiff could be treated with NSAIDs and an exercise program. (Tr. 283). These symptoms continued through

---

[1] In a DIB case, a claimant must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

September 2009 with similar treatment regimens prescribed. (Tr. 287-89).

Plaintiff underwent an endoscopy and colonoscopy in November 2009 that revealed moderate inflammatory changes consistent with colitis and a small hiatal hernia. The doctor opined plaintiff's colonoscopy results were not consistent with a finding of Crohn's disease and she was started on antibiotic therapy. (Tr. 313). Later that month, plaintiff was admitted to the hospital with colitis. (Tr. 316). She was prescribed Ativan for anxiety while she was admitted. (Tr. 319). Plaintiff also had an MRI on her spine that month which revealed mild degenerative disc disease and bulging disc at L4-5. (Tr. 466).

Plaintiff was admitted to the hospital again at the end of November 2009 for abdominal pain. Plaintiff's admitting and discharge diagnoses included Crohn's disease. (Tr. 334). She was started on a Remicade treatment, discharged, and advised to follow up with pain management specialists. (Tr. 337). Thereafter, plaintiff received steroid injections in her spine on four occasions. (Tr. 471-82).

Plaintiff began seeing her gastroenterologist, Dr. Presti, in November 2009. (Tr. 457). Dr. Presti had tests performed that month indicating plaintiff's lab work was consistent with IBD and ulcerative colitis, but not consistent with Crohn's disease. (Tr. 457). In January 2010, Dr. Presti evaluated plaintiff's ulcerative colitis and noted Remicade treatments were helping her colitis symptoms. (Tr. 425-26). Dr. Presti performed an upper endoscopy in March 2010 that revealed mild esophagitis. (Tr. 430). Plaintiff continued to see Dr. Presti through September 2010 for her gastrointestinal problems. (Tr. 421-68, 645-77).

9

Plaintiff saw Dr. Ince, a rheumatologist, in February and March 2010. (Tr. 487-95). He diagnosed her with polyarthritis and sacroiliitis. (Tr. 408, 494). He opined plaintiff may have spondyloarthropathy secondary to Crohn's disease. (Tr. 494). Plaintiff had a urinalysis performed by Dr. Ince which revealed trace amounts of protein displaying Crohn's but otherwise negative results. However, Dr. Ince felt plaintiff had Crohn's disease and continued Remicade treatments. (Tr. 488-90).

Plaintiff was hospitalized again in March and April 2010 for abdominal and back pain. The record shows plaintiff stated she had Crohn's disease and felt it had never been under control. While the tests performed showed little to no problems, plaintiff required a significant amount of pain medication. (Tr. 353, 522-24).

Plaintiff's treatment notes also indicated she had diabetes and hypothyroidism. (Tr. 401-05). The record reflects minimal treatment regarding these problems. Additionally, plaintiff's treatment records show that she had a history of depression and anxiety, but during the relevant time she did not seek treatment specifically for her psychological impairments.

### 4.  Medical Treatment After Date Last Insured

Plaintiff went to the hospital multiple times complaining of debilitating abdominal and back pain after her date last insured.

In the summer of 2011 plaintiff fell and injured her back. (Tr. 916, 933). While X-rays showed no fracture, an MRI revealed degenerative changes and disc protrusion. (Tr. 927, 913). In August 2011, plaintiff underwent surgery for microdiscectomy after which she reported an eighty percent improvement in her pain. (Tr. 764, 748). In September

2011, specialists were concerned about plaintiff's drug seeking behavior and refused to refill any more pain medications. (Tr. 715).

Plaintiff was admitted to the hospital for depression with suicidal thoughts in September 2011. (Tr. 682-88). The doctor's notes indicate the depression had gotten worse recently and plaintiff had not had adequate time on any one antidepressant to achieve real change. (Tr. 682). She was treated with medications and psychotherapy before being discharged. (tr. 691).

### 5.  Opinion of Dr. Presti

In April 2010, Dr. Presti completed an evaluation as to plaintiff's impairments. (Tr. 502-03). He opined plaintiff had Crohn's disease and Crohn's associated arthritis with persistent or recurrent systemic manifestations. (Tr. 502). He stated plaintiff's symptoms included diarrhea, vomiting, muscle weakness, abdominal cramping or pain, nausea, severe fatigue, severe malaise, poor sleep, arthritis and joint pain, and back pain. Dr. Presti felt plaintiff was unable to work as she needed to take unscheduled breaks during a workday and would miss more than three days a month due to her impairments. (Tr. 503).

### 6.  Consultative Exam

In June 2010, Stephen Vincent, Ph.D., performed a consultative mental exam. (Tr. 562-65). Plaintiff stated she received treatment from her primary care physician for anxiety and depression. She reported ongoing difficulties with anxiety that occurred unpredictably. (Tr. 562). She denied any disturbances with regard to her though and was not psychotic. Dr. Vincent noted that she shifted her posture often throughout the

examination and she had difficulty staying focused and on task due to pain. (Tr. 563).

Dr. Vincent felt plaintiff was oriented to person, place, time, and situation. She was able to remember five numbers forward and backward, and could count by threes without error. She refused to do serial sevens, could not recall three previously learned items, and could not recall names of three famous people. (Tr. 564). Dr. Vincent's diagnostic impressions were major depression and generalized anxiety disorder with panic like episodes. (Tr. 565).

### 7.  State Agency RFC Assessments

Plaintiff had mental and physical RFC assessments performed in June 2010. (Tr. 580-91). Both doctors reviewed plaintiff's medical records but did perform examinations. (Tr. 578, 591). M.W. DiFonso, Psy.D., performed a mental RFC assessment and psychiatric review technique. He opined that plaintiff had major depression and generalized anxiety disorder. (Tr. 596, 571). He found plaintiff moderately limited in maintaining concentration, persistence, or pace, and moderately limited understating, remembering, or carrying out detailed instructions. (Tr. 576, 580). Dr. DiFonso opined plaintiff had the cognitive and attentional skills for simple one and two step tasks. Plaintiff's interpersonal and adaptive skills were within normal limits. (Tr. 582).

Dr. Lenore Gonzales performed plaintiff's physical RFC assessment. He opined plaintiff was able to do work at the light exertional level, i.e., frequently lift 10 pounds and occasionally lift 20 pounds. (Tr. 585). She had no environmental or postural limitations. (Tr. 586, 588). These opinions were affirmed by additional physicians who reviewed the record.  (Tr. 679-680).

## Analysis

Plaintiff argues first the ALJ incorrectly determined her RFC by failing to include additional limitations, improperly weighing medical opinions, failing to sufficiently cite medical records, and making inconsistent findings within her opinion. As plaintiff relies in part on her testimony, the Court will first consider her argument regarding the ALJ's credibility analysis.

It is well-established that the credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

The ALJ is required to give "specific reasons" for her credibility findings and to analyze the evidence rather than simply describe the plaintiff's testimony. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)(The ALJ "must justify the credibility finding with specific reasons supported by the record.") The ALJ may rely on conflicts between plaintiff's testimony and the objective record, as "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, if the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff first takes issues with the ALJ's usage of boilerplate language that has been criticized in cases such as *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010), and *Brindisi v. Barnhart*, 315 F.3d 783 (7th Cir. 2003). However, the use of the boilerplate language does not necessarily require remand. The use of such language is harmless where the ALJ goes on to support her conclusion with reasons derived from the evidence. See, *Pepper v, Colvin*, 712 F.3d 351, 367-368 (7th Cir. 2013); *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir 2012).

Plaintiff primarily argues that the ALJ's analysis was insufficient as she did not address the credibility of specific portions of her testimony, explain the basis for rejecting this testimony, or clarify how much weight she actually gave the testimony. Contrary to plaintiff's suggestion, "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, at *3.

ALJ Loewy considered the relevant factors and supported her conclusion with reasons derived from evidence. See, SSR 96-7p. She thoroughly reviewed and analyzed plaintiff's extensive medical records. She concluded that the medical records and objective medical testing did not support plaintiff's claim of disabling pain. For example, the ALJ looked extensively through plaintiff's records in order to find objective medical evidence that indicated plaintiff had Crohn's disease. (Tr. 19). While

several doctors opined plaintiff seemed to have Crohn's disease, all of her colonoscopies and test results were negative for indications of Crohn's. ALJ Loewy then looked at plaintiffs X-rays and MRIs for her back pain. She noted plaintiff was not recommended to have surgery until after the date last insured when she suffered from a fall. (Tr. 21).

The ALJ then took into consideration plaintiff's daily activities. Plaintiff claimed to need multiple naps a day and stated she had multiple bad days a month where she would have to lay down for hours at a time. The ALJ noted that plaintiff also testified to staying busy with her children, driving, paying the bills, and doing housework. (Tr. 23). The Seventh Circuit has repeatedly held it is appropriate to consider these activities but it should be done with caution. The ability to perform daily tasks "does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).  Here, the ALJ does not infer plaintiff's daily activities could translate into her ability to work full-time.   Rather, the ALJ states that plaintiff's statements were inconsistent as her claims of inability to function did not match her statements of her daily activities. (Tr. 23).

The ALJ also looked at plaintiff's prescribed medications. She stated plaintiff had not taken any medications for her Crohn's or arthritis in the previous six months, but had taken medications for psychiatric conditions. ALJ Loewy noted that when plaintiff did take her medications, however, she did not take them regularly and was inconsistent when she filled her prescriptions. The ALJ considered plaintiff's work history and decided it was not consistent with someone who was continually motived to work as plaintiff had minimal earnings history as a hairstylist. (Tr. 23).

The ALJ's credibility assessment need not be "flawless;" it passes muster as long as it is not "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). The analysis is deemed to be patently wrong "only when the ALJ's determination lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008). Here, the analysis is far from patently wrong. It is evident that ALJ Loewy considered the appropriate factors and built the required logical bridge from the evidence to her conclusions about plaintiff's testimony. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Therefore, her credibility determination stands.

Plaintiff then argues the ALJ incorrectly determined her RFC by failing to include additional limitations. An RFC is "the most you can still do despite your limitations." 20 C.F.R. §1545(a). In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record." *Ibid*. Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not supported by the record.

Plaintiff contends that the opinions of Dr. Presti, one of her treating physicians, were not given enough weight in forming the RFC. A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical evidence and is not inconsistent with other substantial evidence in the record. *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).

The version of 20 C.F.R. §404.1527(c)(2) in effect at the time of the ALJ's decision states:

> Generally, we give more weight to opinions from your treating sources,

since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

It must be noted that, "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. See, 20 C.F.R. §404.1527(d). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527(d).

Thus, the ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record. *Henke v. Astrue*, 498 Fed.Appx. 636, 639 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007**). In** light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which

the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

ALJ Loewy met this "lax" standard. She presented a detailed review of the medical evidence and rejected Dr. Presti's opinion regarding plaintiff's inability to work due to frequent work absences and the need for multiple breaks during a workday. The ALJ correctly cited SSR 96-5p which states that the ultimate issue of disability is reserved to the Commissioner and a treating source will never be granted controlling weight. The ALJ then described how Dr. Presti's opinion that plaintiff had Crohn's disease was inconsistent with the evidence as a whole. (Tr. 22). ALJ Loewy noted that only days after Dr. Presti opined plaintiff was unable to work, plaintiff had a colonoscopy that revealed no evidence of Crohn's disease and only possibly quiescent colitis. (Tr. 23, 523).

Plaintiff argues substantial evidence existed in support of her testimony and the opinion of Dr. Presti. She cites multiple portions of the record that she feels corroborate her claims for additional limitations. The ALJ referenced many of the same portions of the record plaintiff cites but goes into further detail. For example, the ALJ noted plaintiff's records stating her symptoms were consistent with colitis. (Tr. 19, 313). However, the ALJ also noted her symptoms were reported as improved by Dr. Presti. (Tr. 20, 653). ALJ Lowey considered plaintiff's history of back problems and noted there were some degenerative changes. (Tr. 19, 466). She also stated that plaintiff had normal range of motion. Additionally, her back pain was not severe enough to warrant surgery until well after the date last insured when she became injured after falling. (Tr. 20-21,

768, 864). The ALJ looked at plaintiff's history of consistent joint pain with arthritis. However, plaintiff also went off her medications by May 2011 because she was "feeling great." (tr. 21, 698, 702). The ALJ created an RFC for the limitations she found were consistent and supported by the evidence on the record.

She finally argues that the ALJ erred in not including additional limitations in the RFC with regard to concentration, persistence and pace, the need to lie down, and additional work absences.

While the ALJ noted plaintiff had a moderate difficulty with concentration, persistence and pace, she also limited plaintiff to simple and routine tasks. This Court agrees with the Commissioner that plaintiff failed to demonstrate how this limitation was insufficient. Plaintiff presented no objective evidence or medical source opinions that she had more difficulty with concentration, persistence and pace than was accounted for within her RFC. The Commissioner correctly points out the ALJ considered the results of plaintiff's consultative examinations and opinions from medical sources, none of which contained a greater restriction than simple and routine tasks. The ALJ noted that plaintiff stated her depression and anxiety were not as problematic as they had been in the past and that medications were proving to be helpful. (Tr. 23).

This Court has reviewed plaintiff's entire medical record. Other than plaintiff's own claims that she could not pay attention, which the ALJ found to not be credible, and the examination with Dr. Vincent, where plaintiff was distracted but redirected easily, there were very few indications plaintiff had difficulty with concentration,

persistence and pace. Additionally, the only medical record showing plaintiff needed to frequently lie down or miss work often was from Dr. Presti, whose opinion the ALJ chose to give "little weight."

It was plaintiff's responsibility to provide medical evidence showing she had impairments with concentration, persistence and pace, the need to lie down or to miss work. 20 C.F.R. §416.912 "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits**."** *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987). She has not presented any acceptable evidence to these points and therefore the ALJ's RFC finding stands. *Buckhanon ex. rel J. H. v. Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010).

As the Commissioner notes, the Seventh Circuit has held that when a claimant believes there are gaps or flaws within an ALJ's opinion, "we give the opinion a commonsensical reading rather than nitpicking it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). Reading the ALJ's opinion from a commonsensical standpoint, it is clear she looked at the appropriate factors and determined plaintiff's RFC based upon the entirety of her medical treatment history.

In sum, plaintiff's argument is, in effect, nothing more than an invitation for the Court to reweigh the evidence. However, the reweighing of evidence goes far beyond the Court's role. Even if reasonable minds could differ as to whether plaintiff is disabled, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment

for that of the ALJ in reviewing for substantial evidence.  *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Loewy committed no errors of law, and that her findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Molly L. Phipps's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATE:  December 10, 2014**

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**